# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Jackie Hillery,

      Plaintiff,

                                        **Case No.: 2:08-CV-1045**

v.                                       **JUDGE SMITH**

                                        **Magistrate Judge Deavers**

Fifth Third Bank, *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiff Jackie Hillery initiated this action against Defendants Fifth Third Bank, Fifth Third Bank (Central Ohio), Kelli Gargasz, and Thomas Mitevski,[1] alleging causes of action under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621, *et. seq.*, and under Ohio Revised Code § 4112.99. Specifically, Plaintiff brings this action to recover damages stemming from her failure to be promoted and ultimate termination from her position with Fifth Third Bank ("Fifth Third"). This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 27).[2] This Motion is fully briefed and now ripe for

---

[1] Plaintiff's claims against Defendants Gargasz and Mitevski were dismissed in this Court's Opinion and Order filed May 11, 2009, because individuals are not liable under the ADEA.

[2] Plaintiff moved to strike Defendant's Notice of Filing Supplemental Authority (Doc. 37). The Motion was properly denied and the Court notes that both Plaintiff and Defendants have had the opportunity to address the applicability of the *Schoonmaker v. Spartan Graphics Leasing, Inc.*, 2010 U.S. App. LEXIS 2288 (6th Cir. 2010), case to the case at bar and there is no harm to either party.

review.  For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I.    FACTS

At the time Plaintiff initiated this Complaint, she was a sixty-three year old former employee of Defendant Fifth Third Bank, an Ohio banking corporation.  Plaintiff began working in the banking industry as a private banking sales representative with National City Bank in 1990.  Plaintiff's supervisor, Joe Wasik, left National City in September 2002 to take a position at Fifth Third.  Shortly after Mr. Wasik left, Plaintiff describes that "Fifth Third began wooing me away from National City."  (Pl.'s Decl. at ¶3).  Plaintiff began working for Fifth Third on January 1, 2003 as a sales associate in the Private Client Banking group, providing support to Fifth Third's private bankers.  Plaintiff was 57 years old when she was hired.  Defendants Thomas Mitevski, head of Fifth Third's Investment Advisors Division ("IAD") and Kelli Gargasz were Plaintiff's supervisors and employees of Fifth Third.

Plaintiff describes that her work for Fifth Third was "nothing less than exemplary." (Pl.'s Memo. in Opp. at 3).  Mr. Mitevski stated about Plaintiff, "Jackie is a key member of our Physician and Healthcare team and has done an excellent job working with customers to ensure their needs have been met and that they are highly satisfied."  (Pl.'s Ex. 25 to Memo. in Opp.).  Mr. Mitevski even directed Plaintiff to train less experience private bankers.  (Pl.'s Decl. at ¶4).

In the spring of 2007, the Investment Advisors Division head, Tom Mitevski and the Private Client Banking group team leader, Kelli Gargasz, became concerned about the ratio of Private Bankers to sales associates.[3]  (Pl. Dep. at 38; Gargasz Dep. at 17, 19, 29, 33-35).  The

---

[3] The sales associates at this time included:  Plaintiff, Connie Brown, Katrina Petrenko, Shawn Davis, Lynn Little, Eva Molineaux, and Judd Mackenbach.

Private Client Banking group had more support people (called "sales associates"), than salespeople (called "Private Bankers"). (Gargasz Dep. at 12-12, 33-34). Mitevski and Gargasz understood that the ratios needed to be better aligned or they would be instructed to eliminate support positions. (Gargasz Dep. at 33-35).

Mitevski and Gargasz decided to address this problem by creating two Junior Private Client Banker positions and transferring two sales associates to those positions. (Mitevski Dep. at 107-109; Gargasz Dep. at 34-35). In these new positions, the sales associates would continue to perform their current support job duties at the same pay, but would also have the additional responsibility of meeting established sales goals. (Pl. Dep. at 39; Gargasz Dep. at 34-35). The new Junior Private Client Banker positions were announced to all the sales associates during a conference call. Plaintiff and four other sales associates chose to interview for these positions. (Pl. Dep. at 38, 40, 50, 52).[4]

Plaintiff was interviewed for the position and during her interview, she stated that she was only interviewing for the position "to keep the team together." (Pl. Dep. at 52). Plaintiff did not ask questions about the position or otherwise express to them that she was up to the task of performing the additional sales responsibilities imposed by the position. (*Id*. at 52-53). Based upon this interview, Gargasz believed that Plaintiff was not really interested in taking the job and was only interviewing out of a sense of obligation rather than to add a sales component to her job. (Gargasz Dep. at 90-91). Based on all the interviews and their observations about the sales associates' performance, Gargasz and Mitevski ultimately chose to transfer Brown, who was 61,

---

[4] Lynn Little and Shawn Davis did not interview for these positions. (Gargasz Dep. 47-48).

the same age as Plaintiff at the time, and Petrenko, age 25, to the two Junior Private Client

Banker positions. (Pl. Dep. at 53; Toppins Decl. at ¶¶ 2, 3 and 6).

Plaintiff alleges that in January 2008, Fifth Third created a position of Private Client

Relationship Manager, but failed to notify Plaintiff of the position. (Compl. ¶ 21-23).

Defendants assert that the Private Client Relationship Manager position was posted on its

internal employee intranet website, and also externally on its internet website. (Pl. Dep. at 44-

46; Gargasz Decl. at ¶ 4). Plaintiff was aware during her employment with Fifth Third that it

posted jobs from time to time, and that she could access and apply for posted jobs if she wanted

to pursue alternate positions with Fifth Third. (Pl. Dep. at 45). Plaintiff did not review those

postings in January 2008, and consequently did not apply for the Private Client Relationship

Manager position, as she was not looking to change jobs at that time. (*Id*. at 45, 49). Fifth Third

ultimately awarded the position to Bryn Challacombe, one of the 33 individuals who applied for

the position through the posting. (*Id*. at 47; Gargasz Decl. at ¶ 5). Challacombe was

approximately 48 years old. (Toppins Decl. at ¶ 4). Plaintiff alleges that she was more qualified

for this position than Challacombe. (Compl. ¶ 25).

In December 2007, Mitevski's superior informed him that, as a result of the economic

downturn, Fifth Third might have to implement a reduction in work force ("RIF") that would

affect Mitevski's group. (Mitevski Dep. at 12-13, 18-19, 24). While Mitevski did not yet know

if such RIF would occur, he passed the information along to Gargasz, then the Private Client

Banking Manager, to prepare her for the possibility of reductions in her group. (*Id*.). When

Mitevsi and Gargasz discussed this potential RIF on a subsequent occasion, Gargasz offered her

opinion that sales associate Eva Molineaux should be selected for termination. (Gargasz Dep. at

102, 105). Mitevski responded that he did not know if it would be Molineaux, Plaintiff, or other

sales associates because it was still unknown whether a RIF would actually be implemented. (Mitevski Dep. at 15-16).

Early in 2008, Fifth Third managers began the process of preparing annual performance evaluations for their subordinates for 2007. (Gargasz Dep. at 120-21, 124). In preparing the evaluations for the sales associates she supervised, Gargasz asked the Private Bankers to provide their input regarding the sales associates' performance and also asked them to recommend a numerical rating. (*Id*. at 120-21, 129, 134-35). Plaintiff was given a "3" or "meets expectations" overall rating for 2007. (Mitevski Dep. at Ex. 28).

Fifth Third managers typically discuss the completed performance evaluations with their employees each year on May 3rd or "Fifth Third Day." (Pl. Dep. at 68; Gargasz Dep. at 124). According to Plaintiff, Private Bankers Joe Wasik and Jeff Van Pelt approached her at her desk in February 2008 to discuss her evaluation. (Pl. Dep. at 67-68). Wasik's verbal comments were entirely positive and consistent with comments from the past years in which she received a performance rating that exceeded the requirements of her position. (Pl. Dep. at 110, 113). Wasik's actions and comments led Plaintiff to believe that Fifth Third had evaluated her the same as it had in the past. (Pl. Dep. at 111). Private Bankers typically did not have verbal reviews like this with sales associates in February. (Mitevski Dep. at 169-70). Plaintiff admits that she did not typically receive verbal comments on her performance evaluation from the Private Bankers she supported prior to Fifth Third Day. (Pl. Dep. at 68).

In February 2008, the head of Human Resources for Fifth Third's Columbus, Ohio operations, Denny Sweet, informed Mitevski that Fifth Third had decided to move forward with a RIF. (Mitevski Dep. at 11, 24-25). Sweet gave Mitevski a total number by which to reduce salary expenses in his group. (*Id*. at 23-24). Mitevski then looked at the staffing in all of the

offices in his group to determine where reductions could be made. (*Id*. at 26). Mitevski observed that the Arena District Office was overstaffed with support personnel, which included two sales associates, Plaintiff and Molineaux, supporting two private bankers.[5] (*Id*. at 26-29). Other offices had one sales associate for every two Private Bankers. (*Id*. at 67-69, 71-72). Mitevski determined that he should eliminate one of the sales associate positions in the Arena District office to correct this overstaffing issue and make the reductions required by the RIF. (*Id*. at 26-30, 93-94).

In order to determine which of the Arena District office sales associates to select for termination in the RIF, Mitevski compared their performance. He reviewed their 2007 performance evaluations and also considered his own personal observations regarding their performance. (Mitevski Dep. at 27-29, 42-46, 85-86, 93-94). Based upon this information, Mitevski believed that Molineaux was the better performer of the two and that Plaintiff's position should be eliminated. (Mitevski Dep. at 42-46, 85-86; Toppins Decl. at ¶ 5).

Mitevski communicated his thought process and selection recommendation to his Human Resources contact, Neesha Patel, for approval in mid to late February 2008. Patel reviewed Mitevski's decision from an HR perspective and later met with Mitevski to discuss. Patel agreed that Plaintiff was, in fact, the lowest performer of the other two sales associates in her job code – Molineaux and Mackenbach. (Mitevski Dep. at 39-40, 97-98, 179-80). Specifically, Plaintiff received a "3" overall rating on her 2007 performance evaluation, while Molineaux and

---

[5] The Arena District Office had three Private Bankers at the beginning of the RIF, Mitevski knew that a decision had been made to transfer one of those Private Bankers to the downtown office, leaving only two Private Bankers in the Arena District Office going forward. (Mitevski Dep. at 67, 71-72).

Mackenbach each received a "4." (Gargasz Dep. at 116-17; Pl. Dep. at Ex. 11, p. 29). Further, all the Arena District Private Bankers supported Mitevski's decision. (Mitevski Dep. at 87-88).

On March 3, 2008, Wasik informed Plaintiff of her termination, which was effective March 28, 2008. (Pl. Dep. at 92; Gargasz Dep. at Ex. 24).[6] Plaintiff then met with Gargasz, Patel and Toppins who provided her with further information about her termination and the benefits being offered to her. (*Id.*). Gargasz suggested that Plaintiff apply for a retail position with Fifth Third and offered to help her secure such a position. (Gargasz Dep. at 159-59; Pl. Dep. at 73, 107-09). Plaintiff chose not to make any application or accept Gargasz's offer to help. Plaintiff's employment with Fifth Third ended as scheduled on March 28, 2008. (Pl. Dep. at 107-09).

On June 4, 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that she was not promoted and ultimately terminated because of her age. (Ex. 28 to Pl.'s Dep.; Compl. ¶¶ 9, 17; Charge No. 532-2008-01412).[7] In response to the EEOC's request for information, Fifth Third wrote a letter, dated August 1, 2008, in which it explained Plaintiff's termination. The letter stated that Fifth Third conducted a "staffing level analysis" in which "a number of positions were reviewed."[8] (Pl.'s

---

[6] Mitevski was unable to communicate the termination decision to Plaintiff because his father passed away and he was out of town to address the issues with his father's estate. (Mitevski Dep. at 74-75).

[7] Plaintiff's Complaint states that the charge was filed on June 17, 2008, which is incorrect.

[8] Plaintiff asserts that she requested through discovery that Defendant produce all documents relevant to the "staffing level analysis" and the "needs analysis" upon which the bank based its EEOC response, but nothing was produced. Plaintiff further states that Mitevski testified in his deposition that he did not received any documents from his superiors directing the process or the criteria he was to use. (Pl.'s Memo. at 7).

Ex. 1, attached to Pl.'s Memo.). The letter further explained that Fifth Third's Investment Advisors Division was "overstaffed." It continued that "Mitevski and Gargasz reviewed the performance of the staff to ensure that the lowest performer was selected for the reduction." *Id.*

Plaintiff received a right to sue letter and subsequently filed the present action on November 5, 2008. Counts I and II of Plaintiff's Complaint allege age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et. seq.* (Compl. ¶¶ 6, 13). Count III, alleging age discrimination in violation of Ohio Revised Code § 4112.99, was dismissed because it is statutorily barred by Ohio's age discrimination election of remedies scheme and for failure to file within the applicable statute of limitations period. Further, Plaintiff's claims against Gargasz and Mitevski were dismissed because individuals are not liable under the ADEA. Defendant Fifth Third now moves for summary judgment on Plaintiff's remaining claims for age discrimination.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[9]  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe.  *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id.* at 1479.

---

[9]  *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56.  Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150.  In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Id.* at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.    DISCUSSION

Plaintiff Jackie Hillery asserts claims of age discrimination against Defendants Fifth Third Bank and Fifth Third Bank Central Ohio (hereinafter "Defendant" or "Fifth Third Bank") for two employment events: the denial of a promotion and the termination of her employment in a reduction in force.  Defendants argue that they are entitled to summary judgment on both of Plaintiff's age discrimination claims.

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discharging an employee "because of such individual's age."  29 U.S.C. § 623(a)(1).  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Geiger v. Tower*

*Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

As a preliminary matter, Plaintiff alleges that she has direct evidence of age discrimination and thus this case must be submitted to a jury without requiring application of the *McDonnell Douglas* circumstantial evidence test. *See Talley v. Bravo Pitino Restaurant, Leg.*, 61 F.3d 1241, 1249 (6th Cir. 1995). Plaintiff argues that "Mitevski's admissions lead to the unavoidable conclusion that age was the only factor used to terminate Jackie." (Pl.'s Memo. at 11). Plaintiff further asserts, relying on her deposition testimony, that Mitevski told her that she "had done a great job but one of [you] [one of the two oldest sales associates] had to go." (Pl.'s Memo. at 4, *citing* Pl.'s Dep. at 79). However, a thorough review of Plaintiff's deposition testimony reveals that the aforementioned quote is inaccurate and does not support her argument. Plaintiff's deposition specifically states:

Q. Who told you that you were one of the two oldest?

A. Tom Mitevski.

Q. And why didn't you tell me at all prior today when I have been talking about did anyone say anything to you about your age, before you had your meeting with your lawyer after we broke?

A. I was one of the two oldest in the group.

Q. Did he tell you that in that meeting?

A. No. I knew that.

Q. So he did not tell you that in that meeting –

A. No.

Q. – did he?

A. No. He told me one of the two of us had to go.

-11-

Q.  He told you one of the two of you had to go.  Tom Mitevski did not say to you you were one of the two oldest.  Did he?

A.  No.

(Pl. Dep. at 112-13).

Plaintiff has blatantly misrepresented her own sworn testimony in an attempt to create direct evidence of age discrimination in this case.  However, the Court finds that Plaintiff has failed to provide any direct evidence of age discrimination and accordingly, she must establish her claims of age discrimination pursuant to *Gross v. FBL Fin. Servs. Inc.*, 129 S.Ct. 2343 (2009), and the *McDonnell Douglas* burden-shifting analysis for circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10]

The Supreme Court held in *Gross* that in an age discrimination case, a plaintiff must show her age was the "but-for" cause of the challenged adverse employment action, not just a motivating factor. 129 S.Ct. at 2351.  Following *Gross*, the Sixth Circuit explained that the *McConnell Douglas* framework remains useful in analyzing circumstantial evidence in ADEA claims. *See Geiger*, 579 F.3d at 622.  Pursuant to the *McDonnell Douglas* burden-shifting analysis, a plaintiff must establish a *prima facie* case for each of her asserted claims of age discrimination.  411 U.S. at 802; *see also Geiger*, 579 F.3d at 622.  To state a *prima facie* case, a plaintiff must establish the four elements of the *McDonnell Douglas* test: 1) that she was a

_____

[10]  Plaintiff asserts that there is currently legislation pending in Congress that may abrogate the holding in *Gross*, which denies ADEA plaintiffs the right to have their issue determined under the mixed-motive analysis. (Pl.'s Memo. at 20).  In light of this, Plaintiff requests that, if the Court were to find against Plaintiff, it stay these proceedings until this legislation process is complete.  Plaintiff, however, cannot possibly know what Congress will do, when any action would take place, or who it would apply to.  Further, what Congress may or may not do is not relevant to this Court's consideration of Plaintiff's age discrimination claim at this time.  Accordingly, construing Plaintiff's alternative request as a motion for a stay, it is denied.

member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class. *McDonnell Douglas,* 411 U.S. at 802.

Once a plaintiff satisfies her *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 804; *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination. *Id.*; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The burden of persuasion, however, remains on the ADEA plaintiff at all times to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Geiger*, 579 F.3d at 620 (*quoting Gross*, 129 S. Ct. at 2351 n.4). The Sixth Circuit has held that a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when it is analyzing the plaintiff's *prima facie* case. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc). Further, the Sixth Circuit has held that in the context of explaining what establishes a *prima facie* case of age discrimination that the *McDonnell Douglas prima facie* elements are not to be applied "mechanically, instead opting for a case-by-case approach that focuses on whether age was in fact a determining factor in the employment decision." *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). The Sixth Circuit recently reiterated in an unpublished decision that these principles apply equally in a work force reduction setting. *See Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 456 (6th Cir. 2007).

The Court will now apply the aforementioned standard to each of Plaintiff's claims for age discrimination.

**A. Failure to Promote Plaintiff to Private Client Relationship Manager**

     i.     *Prima Facie* Case

Plaintiff cannot establish a *prima facie* case of age discrimination in failing to promote her to a private client relationship manager because she did not even apply for the position. (Pl. Dep. at 45). Fifth Third posted the position on its intranet and internet websites for application. Plaintiff knew she could access job postings on these sites and apply for posted jobs. (Pl. Dep. at 45, 48-49). However, Plaintiff chose not to review those postings, and did not apply for this position. (*Id.*). Because Plaintiff admittedly never applied for this position, she cannot establish the second element of a *prima face* case. *See Watson v. City of Cleveland*, 202 Fed. Appx. 844, 854-55 (6th Cir. 2006) (holding that plaintiff did not establish a *prima facie* case of discrimination, in part, because she never applied for the position). Accordingly, since Plaintiff never applied for the position, she was not denied the promotion.

     ii.     Pretext

Even if Plaintiff could establish a *prima facie* case of age discrimination for failure to promote her, Defendant has provided a legitimate, nondiscriminatory reason for not promoting her–her own failure to apply for the posted position.

Defendant Fifth Third is therefore entitled to summary judgment on Plaintiff's claim of age discrimination for failure to promote her to a private client manager.

**B. Termination of Plaintiff's Employment**

     i.     *Prima Facie* Case

Defendant argues that Plaintiff cannot establish a claim for age discrimination because her termination was a result of a reduction in work force. In a reduction in work force case, the plaintiff must meet a "heightened standard" in establishing a *prima facie* case. *See Geiger*, 579

F.3d 614, 622-23 (6th Cir. 2009), *citing Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990). In *Barnes*, the Sixth Circuit noted that "[w]hen work force reductions by the employer are a factor in the decision, 'the most common legitimate reasons' for the discharge are the work force reductions." *Id.* at 1465. By merely showing the other elements of a *McDonnell Douglas* case, a plaintiff has not presented any evidence tending to show that the work force reduction was not the reason for the discharge, which does not make out a *prima facie* case. *Id.* Thus, when a termination arises as part of a work force reduction, the fourth element of the *McDonell Douglas* test is modified to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.*

The *Barnes* Court further explained that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* Thus, according to *Barnes*, a plaintiff might meet the fourth element in a reduction in force situation as follows:

> If the plaintiff was truly singled out for discharge because of age he or she should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case. For example, a plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff. Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive . . . . The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.

*Barnes*, 896 F.2d at 1465-66 (internal citations omitted).

There does not appear to be a dispute between the parties with respect to the first three elements of the *McDonnel Douglas prima facie* case of age discrimination. Plaintiff was a member of the protected class, over the age of 40; she was qualified to perform the job; and was subjected to an adverse employment action when she was terminated. In a typical age discrimination case, a plaintiff can establish the fourth element of a *prima facie* case by showing that she was replaced by, or treated differently than a substantially younger individual. However, as set forth above, in a reduction in work force case, Plaintiff must present evidence to show that there is a chance that the reduction in force is not the reason for the termination.

Plaintiff argues that she was more qualified than any of the other sales associates, relying on the 2006 evaluations. Plaintiff also cites to the fact that she was asked to mentor less experienced private bankers and to assist new private bankers. Plaintiff argues that the only inference that can be drawn, construing all the facts in her favor, is that the two oldest sales associates were singled out and considered for termination in the reduction in work force. (Pl.'s Memo. in Opp. at 14).

Plaintiff's arguments that she was more qualified than any of the other sales associates are based on her 2006 evaluation and her training other sales associates, rather than her most recent performance. Defendant does not contest that Plaintiff was qualified for the job, nor that she had previously been doing a good job. Plaintiff does not have any evidence to dispute that her 2007 evaluation was lower. Further, Plaintiff cannot deny that when compared to the two sales associates in her same job code, Molineauz and Mackenbach, her performance for 2007 was undeniably the lowest rated.

Additionally, the fact that Plaintiff was the oldest sales associate in the Private Banking Group is not sufficient to establish a *prima facie* case of age discrimination. *See Almond v. ABB*

*Industrial Systems, Inc.*, 56 Fed. Appx. 672, 675 (6th Cir. 2003) (finding that the fact that

terminated employee is oldest in his department is insufficient to establish *prima facie* case

under the ADEA); *see also Bynum v. Fluor Fernald, Inc.*, 2006 U.S. Dist. LEXIS 7796, *20-21

(S.D. Ohio 2006) (J. Weber) (finding that plaintiff terminated in RIF could not establish prima

facie case of age discrimination showing that she was the oldest employee in the group within

which she was considered for the RIF and that younger employees were retained); *Dabrowski v.*

*Warner-Lambert Co.*, 815 F.2d 1076, 1078-79 (6th Cir. 1987) (stating that "[t]his court has long

recognized that the mere fact that a younger employee or applicant receives better treatment than

an older one is insufficient to carry the burden of proof in a case under the federal Age

Discrimination in Employment Act"; holding that the plaintiff employee's evidence showed little

more than that employer hired persons younger than the plaintiff); *LaGrant v. Gulf & W. Mfg.*

*Co.*, 748 F.2d 1087, 1090-91 (6th Cir. 1984) (stating that "[t]he mere termination of a competent

employee when an employer is making cutbacks due to economic necessity is insufficient to

establish a *prima facie* case of age discrimination"; holding that the plaintiff failed to state a

*prima facie* case by a mere showing that a younger department head was retained and the

plaintiff, also a department head, was laid off); *Adams v. Proto Plastics, Inc.*, 151 F. App'x 468,

470 (6th Cir. 2005) (holding that mere fact that substantially younger employees in comparable

positions are retained during reduction in work force is not sufficient to state a *prima facie* case);

*Reminder v. Roadway Express, Inc.*, 215 F. App'x 481, 483-84 (6th Cir. 2007) (per curiam)

(finding no "additional evidence" even though younger workers were retained during work force

reduction).

  Therefore, under the law of the Sixth Circuit, Plaintiff would have to have established

that she possessed superior qualities to Molineaux and Mackenbach in order to meet her burden

of establishing a *prima facie* showing in the context of a reduction in work force. *See Barnes*, 896 F.2d at 1466 (stating that a plaintiff could establish a *prima facie* case by showing that her qualifications were superior to that of a younger coworker). Plaintiff has not made that showing and accordingly, has failed to establish a *prima facie* case of age discrimination.

ii.    Pretext

Even if we assume that Plaintiff can establish a *prima facie* case of age discrimination, she cannot show that Defendant's proffered reason for terminating her was pretext for age discrimination. Defendant Fifth Third has offered a legitimate non-discriminatory reason for her termination–a reduction in work force prompted by the onset of a recession. Defendant Fifth Third asserts that Plaintiff was selected for "termination in this RIF because the Arena District where she worked was overstaffed compared to other offices, and because her 2007 performance, when compared to the other sales associates in the Arena District and in her same job code, was the lowest." (Def.'s Mot. at 14). These reasons for termination have been upheld as legitimate, non-discriminatory reasons. *See Brown v. EG & G Mound Applied Technologies*, 117 F. Supp.2d 671, 680 (S.D. Ohio 2000) (J. Spiegel) (employer stated legitimate, non-discriminatory reason for plaintiff's termination in RIF where Plaintiff received the lowest score in evaluation process); *Bynum*, 2006 U.S. Dist. LEXIS at *22 (employer stated legitimate, non-discriminatory reason for plaintiff's termination in RIF where plaintiff and co-worker selected for RIF received the lowest scores in an evaluation process).

Plaintiff has not provided any evidence contrary to Defendant's contentions that the Arena District Office was overstaffed with sales associates when compared to other offices in central Ohio. Nor, has Plaintiff produced any evidence that Molineaux received a lower score than her on her 2007 performance evaluation, or that Mitevski did not believe that Molineaux's

performance was better than Plaintiff's. *See Braithwaite v. Timken Company*, 258 F.3d 488, 493 (6th Cir. 2001) (to show pretext, a plaintiff must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.").

Plaintiff does assert that the Court must find Defendant's reasons are pretext because of (1) the absence of an objective plan to carry out a reduction in force; and (2) Defendant's shifting reasons for termination.

        *a.*    *Objective Plan*

Plaintiff argues that Defendant did not produce any documents that identified any plan or process used to implement a reduction in force and this fact alone requires a finding of pretext, relying on *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 533 (6th Cir. 2005). In *Blair*, an ADEA RIF case, the employer claimed that the plaintiff's primary sales account was going away and thus it no longer needed plaintiff's services. *Id.* at 532. The Court held that there was sufficient evidence to submit the issue to a jury, stating that the employer's "lack of an objective plan for the reduction-in-force creates a genuine issue of material fact regarding whether this explanation is credible …. Here, the record indicates that a substantial number of Henry Filter employees … lost their jobs, but reveals no blueprint for this reduction." *Id.* at 533.

Plaintiff argues that the court's holding in *Blair* illustrates the courts' reluctance to credit subjective reasons for adverse employment actions for the very fact that such unverifiable claims can easily mask discriminatory intent. *See, e.g., Proffitt v. Anacomp, Inc.*, 747 F.Supp. 421, 428 (S.D. Ohio 1990) (M.J. Steinberg) (summary judgment denied, subjective reasons that cannot be documented objectively not sufficient to eliminate possibility of pretext); *Ross v. Arcata Graphics Co.*, 788 F.Supp. 1298, 1302 (W.D. N.Y. 1992) (absence of documentation supporting

proffered criteria for plaintiff being RIF'd makes proffered explanations suspect and does not eliminate potential for pretext). Relying on the aforementioned cases, Plaintiff argues that Defendant "Fifth Third's lack of any blueprint or documentation at all leaves the probability that the explanation it now gives for terminating Jackie is merely a pretext for discrimination, especially given the subjective nature of the evaluations." (Pl.'s Memo. at 17).

Defendant Fifth Third argues that Plaintiff's reliance on *Blair* is misplaced because the Sixth Circuit held that the "lack of an objective plan, coupled with Blair's circumstantial evidence of age discrimination, would permit a reasonable fact-finder to conclude that [the employer's] proffered non-discriminatory reason for terminating Blair was a pretext for discrimination." *Blair*, 505 F.3d at 533-34. The lack of an organized plan is therefore only one factor that may lead to a finding of pretext, not a dispositive factor as Plaintiff suggests. *See Bell v. Prefix, Inc.*, 321 Fed. Appx. 423 (6th Cir. 2009) (finding that the lack of a formal, objective process or criteria for selecting employees for a RIF was not independently dispositive as to pretext and was, instead, only one of five factors, when viewed "collectively," that lead to a finding of pretext).

Plaintiff does not contest that a RIF occurred, nor provide any evidence to the contrary. Plaintiff's arguments that Defendant Fifth Third did not create a detailed plan or other paperwork to document that the Arena District Office was overstaffed and that a reduction in work force was necessary, does not establish that Plaintiff's termination as a result of this reduction in force is pretextual because there is no other evidence to suggest age discrimination in this process. *See Skelton v. Sara Lee Corp.*, 249 Fed. Appx. 450, 462 (6th Cir. 2007) ("even if we assume that Defendant's evaluation process was haphazard–at least as it pertained to note-taking during the interviewing process–there exists no reasonable inference that Defendant

discriminated on the basis of age" because there was no other evidence that this process, although "imperfect" was discriminatory based on age).   Therefore, based on the Sixth Circuit's reasoning in *Skelton* and *Blair*, Plaintiff's argument that the lack of an objective plan for the reduction in force is pretextual fails.  Plaintiff has failed to produce any other evidence or arguments that, when coupled with the lack of any objective plan for the reduction in force, evinces pretext.

        b.     *Shifting reasons*

Plaintiff, relying on *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006), argues that Defendant has provided shifting reasons for Plaintiff's termination, which is evidence of pretext. The Sixth Circuit in *Asmo* held that "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext."  *Id.* at 595; *see also Thurman v. Yellow Freight Sys. Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996).  *Asmo* held that the employer's changed explanation from what it originally gave the employee to what it later gave the civil rights agency and in the decision maker's deposition required that the matter be submitted to a jury. In *Asmo*, the manager gave the employee five reasons for her termination when the employee learned of her dismissal.  However, when the company responded to the civil rights commission and during the manager's deposition, the company and manager only cited three reasons for the employee's termination. The *Asmo* Court concluded:

> It is unclear how Santoro [the manager] initially came up with these [five] reasons for termination, but the fact that they were later eliminated, and they happen to be the two reasons that Santoro gave that are false, is very suspicious. It appears that Santoro offered any and all reasons he could think of to justify his decision to Asmo, whether or not they were true. Once a lawsuit was filed and Keane knew the reasons would be subject to scrutiny, it changed the justifications … to include only those that were either circumstantially true or could not be as easily penetrated as false.

*Id.* at 596.

Plaintiff argues that Defendant Fifth Third gave multiple contradictory explanations as to

why it selected Plaintiff for termination, including:

> 1. Mitevski told Hillery on March 10, 2008 that no criteria was used in making the decision, that seniority was not an issue, that Jackie did a great job, and that either she or Molineaux (i.e., one of the two oldest) had to be terminated. Hillery Dep. at 111.
>
> 2. In its response to the EEOC, Fifth Third claimed that Mitevski and Gargasz had done a needs analysis of the entire Private Banking staff and had concluded that Jackie was "one of the lowest performers." Fifth Third then claimed that it compared Jackie's performance to the performance of two other sales associates, Molineuax and Mackenbach, who were the only three employees in that particular job code. Plaintiff's Exhibit 1.
>
> 3. Gargasz claimed that, well before 2008, Mitevski had originally chosen Jackie as the individual to be terminated, even though all of the sales associates' performances were considered and even though the 2007 evaluation process had not yet begun. Gargasz Dep. at 102-03, 105, 113, 115.
>
> 4. Mitevski claimed that he never considered any sales associates for termination except for the two oldest because they were located in the Arena District; however, Mitevski's criteria was not only the written performance evaluations, but also his own subjective "observations." Only after Mitevski had made his decision was he informed that there were three employees in the same job code. Mitevski Dep. at 42-44, 48.

(Pl.'s Memo. at 18).

Plaintiff argues that these "shifted" explanations and/or contradictory statements require

the Court to deny Defendant's Motion for Summary Judgment. Defendant Fifth Third argues,

and the Court agrees, that "to the extent any differences exist, they are merely the result of

different individuals in the organization with a different perspective describing a process from

their peculiar vantage point and in their own style." (Def.'s Reply at 15). It is reasonable that

different individuals involved in the reduction in work force would have slightly different

recollections of what transpired. Further, any differences in Gargsz's testimony, which lacked first-hand knowledge, from that of Mitevski, who actually went through the process and who testified as to exactly why he made the decision to terminate Plaintiff's employment, do not create a material contradiction of the facts.

Plaintiff also attempts to illustrate shifting by pointing out that Mitevski added an additional criteria in evaluating the sales associates, his subjective "observations." However, this evidence is not a change, but rather reinforcing or further explaining his decision-making process. Even if Mitevski's reasons for terminating Plaintiff were subjective, this evidence does not raise an inference of age-based discrimination. *See Geiger*, 579 F.3d at 625 (holding that employer's preference for another employee was not actionable unless motivated by discriminatory animus); *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir. 2005) (holding that a supervisor's decision to value certain criteria higher than other criteria listed in job application did not raise inference of pretext; noting that the law does not require employer to make perfect decisions, but simply prevents employers from taking adverse employment actions for impermissible, discriminatory reasons); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates."). None of the arguments presented by Plaintiff give rise to an inference that Defendant Fifth Third's decision to terminate her was so unreasonable as to create an inference of pretext.

Accordingly, Plaintiff cannot prove that Defendant Fifth Third's proffered reason–that she was the lowest performer of the other sales associates–had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct. *Wexler*, 317 F.3d at 576; *Manzer v. Diamond Shamrock Chems. Co.*, 29

F.3d 1078, 1084 (6th Cir. 1994).  Nor has Plaintiff shown that Defendant Fifth Third's decision to terminate her employment was so unreasonable as to give rise to an inference of pretext.  *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009).  Plaintiff merely disagrees with Fifth Third's conclusions, but has offered nothing more than her subjective belief that she is more qualified or productive than the other sales associates.  Plaintiff's subjective views in relation to other coworkers, without more, are insufficient to establish discrimination. *Cf. Briggs v. Potter*, 463 F.3d 507, 516-17 (6th Cir. 2006) (holding that a plaintiff's subjective views of his qualifications in relationship to other applicants, without more, fails to establish discrimination).  In other words, she has not created an inference that the proffered reason had no basis in fact.   Plaintiff has failed to meet her burden of producing sufficient evidence from which a jury could reasonably reject Defendant's explanation of why it terminated her.  *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

The Clerk shall remove Document 27 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**